UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD HENRY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4661** |
| **MARLIN GUSMAN, ORLEANS PARISH SHERIFF, GARY MENARD, OPSO COMPLIANCE DIRECTOR, OPSO DEPUTY SON AND OTHER UNKNOWN DEPUTIES** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 15)** filed by the defendant, Gary Maynard, seeking dismissal of plaintiff's claims against him under Fed. R. Civ. P. 12(b)(6) based on absolute judicial immunity. The motion and the underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that the motion can be disposed of without an evidentiary hearing.

### I.  Factual Background

The plaintiff, Lloyd Henry ("Henry"), was a pretrial detainee in the Orleans Justice Center ("OJC") at the time of the incidents alleged in his complaint.[1] Henry through counsel filed this complaint against the defendants, Orleans Parish Sheriff Marlin Gusman, Compliance Director Gary Maynard, Deputy Son, and other unknown deputies, citing the federal question and supplemental jurisdictions of this Court alleging "constitutional claims against the defendants"

---

[1] Rec. Doc. No. 1.

under the Eighth and Fourteenth Amendments of the U.S. Constitution and state tort law.[2] Specifically, Henry alleges that on May 5, 2017, due to the intentional and/or negligent acts of defendant Deputy Son and the insufficient number of guards on the tier, Henry was struck by another inmate causing the fracture of his jaw and facial bones.

Henry asserts that, because of inadequate staffing, the two-level tier 2F was manned only by one guard, in this case Deputy Son.  As a result, the policy or routine was for the sole deputy to open the doors of the upper level cells to allow the inmates (about half of the tier population) to access the open floor for recreation.  The inmates in the lower cells remained locked in their cells.  After the designated time allotted, the deputy would lockdown the inmates in the upper cells and then open the lower cells to allow the second half of the inmates time on the open floor.

Henry claims that, on the date in question, however, four inmates from the upper cells, including the assailant, Nicholas Bourne, failed to heed Deputy Son's instructions to lockdown.  In addition, Bourne allegedly placed an object in the path of the sliding cell door to prevent it from fully closing.  Henry further asserts that Deputy Son should have seen the open cells on the control panel and called for assistance to get the four inmates locked-down.  Instead, Deputy Son did not assure the full lockdown of the upper floor and opened the lower floor cells doors, which included Henry's cell.  Henry and the other lower-floor inmates entered the open floor for recreation time, and Henry took a seat in a chair.  Bourne at some point left his upper-floor cell and struck Henry across the face.

Relevant to this motion, Henry further alleges that defendant Maynard, as the appointed Compliance Director of the Orleans Parish Sheriff's Office, along with Sheriff Gusman, had a

---

[2]The complaint declares no specific federal or state statutory cause of action.

practice or policy of failing to adequately staff the OJC and failing to adequately supervise and train the staff at the OJC. This, Henry claims, failed to discourage constitutional violations and condoned or encouraged violence among prisoners at OJC. He alleges that Maynard and Gusman did not require training or retraining of deputies known to have engaged in misconduct or respond to past violence and threats of violence. He asserts that this amounted to deliberate indifference to Henry's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.

## II.  Pending Motion to Dismiss

Maynard filed the Motion to Dismiss (Rec. Doc. No. 15) under Fed. R. Civ. P. 12(b)(6) asserting that he is entitled to absolute judicial and quasi-judicial immunity through his appointment as Compliance Director, and alternatively he is entitled qualified immunity and discretionary immunity from the state law claims based on Henry's failure adequately to state a federal claim or state negligence claim against him.

### A.  Maynard's Arguments in Support (Rec. Doc. Nos. 15-1, 24, 28, 31)

Maynard asserts that he was appointed as Compliance Director by the Honorable District Judge Lance Africk in *Jones v. Gusman*, Civ. Action 12-859"I"(5) (E.D. La.). In that case, the class of prisoner-plaintiffs and the United States of America sought redress including injunctive relief because of various alleged unconstitutional conditions at the Orleans Parish Prison, including rampant inmate violence. Judge Africk eventually adopted a Consent Judgment submitted by the parties and which set forth the procedures and protocol for reparation and redress of the alleged unconstitutional conditions and plans for future improvement.[3] This led to the eventual

---

[3] Civ. Action 12-859, Rec. Doc. No. 466.

appointment of Maynard as the Compliance Director beginning October 1, 2016, to assure the compliance with the provisions of the consent decree.[4]

Maynard claims that, under the terms of his appointment by Judge Africk, he is "answerable only to the Court," and is "a representative of the Court and is not an employee of OPSO."[5] Because of this, Maynard asserts his absolutely judicial or quasi-judicial immunity from suit for actions taken within the scope of his authority as Compliance Director, relying on several cases addressing court appointed receivers, including *Plata v. Schwarzenegger*, No. 01-cv-1351, 2005 WL 2932253, at *1 (N.D. Cal. 2005). Maynard asserts that Henry's allegations against him stem directly from his role as Compliance Director, and he is entitled to absolute immunity. Maynard also notes that, to the extent he is sued in his official capacity, that is tantamount to suit against the Court, and any such claim must be dismissed. In addition, even if not dismissed, he would be the incorrect party since he is no longer in the position of Compliance Director.

In the alternative, Maynard asserts that, because Henry has failed to adequately allege a constitutional violation arising from the attack by another inmate and has therefore failed to overcome Maynard's qualified immunity or his discretionary immunity under state law.

In his supplemental pleadings, Maynard also relies on the recent orders issued in *Jones*, in which Judge Africk, by adoption of the assigned Magistrate Judge's Report and Recommendation, resolved that the Compliance Director was the functional equivalent of a court-appointed receiver like that addressed in *Plata*.[6]

---

[4]Civ. Action 12-859, Rec. Doc. No. 1082. Maynard has since resigned effective February 19, 2018. *Id.*, Rec. Doc. No. 1151.

[5]Civ. Action 12-859, Rec. Doc. No. 1082, pp. 3, 11.

[6]Civ. Action 12-859, Rec. Doc. No. 1199, pp. 7-8.

B.  **Henry's Opposition to the Motion (Rec. Doc. No. 19)**

Henry opposes Maynard's motion to dismiss arguing that, as Compliance Director, Maynard is not entitled to the absolute judicial or quasi-judicial immunity afforded a court appointed receiver. Relying on *Plata*, Henry points to proposed distinctions in the duties and authorities given to Maynard as compared to a court-appointed receiver. In addition, Henry argues that Judge Africk's appointing order does not contain any grant of immunity like the order in *Plata* and other receiver cases cited.

Henry further alleges that Maynard is not entitled to qualified immunity, because although he has alleged intentional indifference by Maynard, as a pretrial detainee, he need not establish the subjective component of a deliberate indifference test, citing *Kingsley v. Hendrickson*, __ U.S. __. 135 S. Ct. 2466, 2470-71 (2015). In addition, he argues that he has stated a claim of failure to protect based on the continued and pervasive violence within the prison sufficient to overcome the suggestion of a qualified immunity. He further argues that Maynard is not entitled to discretionary immunity under state law, because his policies and intentional and negligent actions related to supervision and staffing were neither discretionary nor related to a legitimate governmental objective.

II.  **Standards of Review Under Fed. R. Civ. P. 12(b)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re*

*Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*.

**III.   Analysis**

Defendant Maynard seeks dismissal of the plaintiff's claims against him under the doctrine of absolute judicial or quasi-judicial immunity based on his court-appointed status as Compliance

Director over the OJC consent decree in *Jones*, *supra*. Neither party has discussed the distinction between Maynard in his individual or official capacity and the impact of that on this motion to dismiss and the immunity defenses. Nevertheless, for the following reasons, the motion should be granted.

### A.   **Individual Capacity**

Maynard claims absolute immunity from suit because he was sued by Henry for actions taken strictly in his role as Compliance Director. The doctrine of judicial immunity is granted to protect judicial officers in their exercise of judicial functions. *See Butz v. Economou*, 438 U.S. 478, 509 (1978); *Forrester v. White*, 484 U.S. 219, 226-27 (1988). The Supreme Court has extended absolute judicial immunity to certain other "quasi-judicial" administrative officers who perform functions closely associated with the judicial process. *See Butz*, 438 U.S. at 513.

To determine the availability of this extended absolute immunity, the Supreme Court applies a functional approach to the role of the person so claiming the protection. *Forrester*, 484 U.S. at 223. This functional approach examines the "nature of the functions with which a particular official or class of officials has been lawfully entrusted." *Id*. The courts must "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise" of such functions. *See Id*.

As the parties agree in this case, it has long been the rule that "[c]ourt appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995). In keeping with this premise, both Maynard and Henry rely heavily on the similarities and distinctions argued between the

functions and duties of Maynard as the Compliance Director and the court-appointed receiver in *Plata*, 2005 WL 2932253 at *1.

The decision in that regard has been resolved during the pendency of this motion. Specifically, as mentioned above, the current Compliance Director and *Jones* class-plaintiffs have already presented the issue to Judge Africk, and he has ruled. This Court shall follow that same course.

The *Jones* Court has resolved that the Compliance Director (appointed by Judge Africk in *Jones*) is the functional equivalent of a court-appointed receiver.[7] The Court held that the Compliance Director is "as an agent or officer or extension of the Court."[8] The *Jones* Court compared in great detail the duties of the Compliance Director to those of the receiver addressed in *Plata* "to illustrate that the Director does in fact 'possess[] all the relevant characteristics of a court-appointed receiver.'"[9] The *Jones* Court reiterated with strong emphasis that "the Compliance Director exercise[s] the authority vested in him by the Court and the Stipulated Order as an extension of the Court itself, answerable only to the Court." (emphasis in original). [10]

Despite this clear decree, the *Jones* Court declined to declare that the Compliance Director enjoys an overarching absolute immunity based merely on the appointment; nor did the Court foreclose it. Instead, the *Jones* Court deferred the question of the Compliance Director's absolute immunity to the judicial officers presiding over the various cases against the Director, recognizing

---

[7]Civ. Action 12-859, Rec. Doc. No. 1199, pp. 7-8.

[8]Civ. Action 12-859, Rec. Doc. No. 1199, p. 5.

[9]Civ. Action 12-859, Rec. Doc. No. 1199, p. 7.

[10]Civ. Action 12-859, Rec. Doc. No. 1199, p. 10.

that there are exceptions[11] to absolute judicial immunity to be evaluated based on the facts of the particular case.[12]

This invitation to address immunity provides this Court the opportunity to consider the long-standing functionality test to resolve whether the claims against Maynard in this case arose from his agency with the Court to entitle him to absolute judicial or quasi-judicial immunity. The allegations in Henry's complaint assert that Maynard acting as Compliance Director failed expeditiously to correct wrongs within the prison, including quelling of violence through staff allotment, supervision, and training, in accordance with the consent decree he was appointed to enforce. Clearly, the actions or derelictions alleged by Henry are related to and derived from Maynard's role as Compliance Director, a functionary of the *Jones* Court. For without that capacity, Maynard would have had no personal responsibility at the OJC to do the things Henry seeks to compel and redress.

For these reasons, the complaint does not set forth a plausible claim against Maynard to overcome Maynard's absolute immunity from suit in his individual capacity.

### B. Official Capacity

A similar resolve can be reached for Maynard in his official capacity. To be clear, Maynard's quasi-judicial immunity extends strictly to the suit against him personally in his individual capacity. *See Turner v. Houma Mun. Fire and Pol. Civ. Serv. Bd.*, 229 F.3d 478, 482-

---

[11]Civ. Action 12-859, Rec. Doc. No. 1199, p. 5.

[12]Such exceptions are generally recognized in non-judicial matters (such as employment) or when a judge acts without any jurisdiction. *See*, *e.g.*, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (Recognizing two circumstances when a judge is not immune from liability, for nonjudicial actions not taken in the judge's judicial capacity and judicial actions taken in the complete absence of all jurisdiction); *Forrester*, 484 U.S. at 230 (holding that a judge's dismissal of a subordinate court employee is not a judicial act entitled to absolute immunity). Neither category of exceptions exists in this case.

83 (5th Cir. 2000). A clear distinction is made by the courts between immunity defenses afforded and individual and defenses to an official capacity suit. *Id*.

The Court instead must treat suit against a person in an official capacity as suit against the entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Supreme Court has made clear that the only immunity defenses available to a defendant sued in his official capacity are those that could be asserted by the entity he represents. *Hafer*, 502 U.S. at 25.

In this case, Maynard sued in his official capacity is equivalent to suit against Judge Africk, as the presiding judicial officer to whom he is "only answerable" and for whom he acts as "agent or officer or extension of the Court."[13] Under any consideration of the required immunity functionality test, Judge Africk acting as presiding judicial officer over the dispute, resolution and on-going consent decree in *Jones* is without doubt entitled to absolute judicial immunity as defined above. *See Crawford v. Gusman*, No. 17-13397, 2018 WL 3773407, at *3 (E.D. La. Aug. 9, 2018) (Reasoning that to hold the OJC Compliance Director liable would equate to finding the *Jones* Court liable for its efforts to adjudicate the dispute between the prisoners and the Orleans Parish Sheriff's Office).

Thus, Henry's complaint also alleges no plausible claim to overcome the absolute judicial immunity to which Judge Africk as the *Jones* Court is entitled through suit against Maynard in his official capacity for the actions taken in his official capacity as Compliance Director.

---

[13] Civ. Action 12-859, Rec. Doc. No. 1199, p. 5.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Motion to Dismiss (Rec. Doc. No. 15) filed by Gary Maynard be **GRANTED**, and the claims against Maynard in his individual and official capacities be dismissed under the doctrines of quasi-judicial and judicial immunity.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _12th day of December, 2018.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**